## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JAKWAN LASH,**                                  Case No. 1:19 CV 1616

    Petitioner,                          Judge Benita Y. Pearson

    v.                                   Magistrate Judge James R. Knepp II

**EDWARD SHELDON,**

    Respondent.                          **REPORT AND RECOMMENDATION**

### INTRODUCTION

*Pro se* Petitioner Jakwan Lash ("Petitioner"), a prisoner in state custody, filed a Petition

seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden

Edward Sheldon ("Respondent") filed an Answer (Doc. 5) and Petitioner filed a Reply (Doc. 11).

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred

to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-

document entry date July 17, 2019). For the reasons discussed below, the undersigned recommends

the Petition be denied.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by

a state court are presumed correct and can only be contravened if the habeas petitioner shows, by

clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. §

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state

court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth

District Court of Appeals set forth the following facts on direct appeal:

{¶ 2} In 2015, Lash was charged with aggravated robbery, robbery, two counts of kidnapping, petty theft, and tampering with evidence. The aggravated robbery, robbery, and kidnapping counts contained one- and three-year firearm specifications and forfeiture specifications. The matter proceeded to a jury trial at which the following pertinent evidence was presented.

{¶ 3} Lash worked as a sales clerk at AutoZone on Mayfield Road in Cleveland Heights in 2013 and 2014. As a clerk, his duties included sweeping and mopping the store floor, tidying up displays, and taking trash out to the dumpsters, which was the routine he conducted each night at closing time. He was familiar with the procedures for operating the cash register, including where large bills were kept, and what remained in the registers and store safe at closing time. He also knew the manager could access about $1,400 in cash at closing time.

{¶ 4} Kenneth McElrath had been the sales manager at AutoZone since the store had opened. He had worked with Lash and considered him a friend. Lash quit AutoZone in 2014, but continued to shop there.

{¶ 5} In early August 2015, Lash, and three friends, Jeremy Merritt, Alexander Hawkins, and Leontae Jones, began plotting to rob AutoZone. In the weeks leading up to the robbery, the four men texted each other to discuss plans to case the store, transfer the title for the getaway car, purchase handcuffs, and discuss what to wear during the robbery.

{¶ 6} On Sunday, August 16, 2015, shortly before the 9:00 p.m. closing time, McElrath and store employee Randy Hay began store closing procedures. Hay, who had worked at the store for six to eight months, swept and mopped the floor, and then proceeded to take the trash out to the dumpster. Two men wearing masks approached Hay as he neared the trash corral. The men took him inside the corral at gunpoint and one man held a gun to his neck while the other man bound him with duct tape, and handcuffed him. The men took Hay's cell phone and left him. Hay, who testified he was scared for his life, did not move until police arrived.

{¶ 7} Meanwhile, McElrath was alone inside the store when three customers pulled up in a SUV and entered the store. The customers told McElrath that they had seen something happening in the back near the trash corral. McElrath immediately locked the door with customers inside and called 911.

{¶ 8} Officer Robert Butler of the Cleveland Heights Police Department was the first officer to arrive on scene. He saw Hay on his knees, handcuffed, and covered with tape. Using his key, Officer Butler removed the handcuffs and observed that the serial number on the handcuffs had been scratched beyond recognition. Officer Butler also saw items discarded near the trash corral and used his canine partner Rocky to find a scent. Rocky tracked a scent through the neighborhood south of the store. The trail went cold in the middle of a nearby street which, the officer testified, suggested that the assailants had gotten into a car.

2

{¶ 9} During the same time as the incident at AutoZone was occurring, a call came into the Cleveland Heights Police Department for a street fight with guns on Hollister Avenue. Sergeant David Speece and Officer Lewis Alvis responded to the street but found the street quiet. This led the officers to believe the call had been a hoax. The officers then responded to AutoZone.

{¶ 10} Detective Michael Reese and Officer Matthew Lasker processed the crime scene. Officer Lasker located discarded latex gloves and additional strips of duct tape on the tree lawn near the western entrance to the AutoZone parking lot. Sergeant Speece interviewed the three customers who saw commotion out by the trash corral and obtained a suspect description, which he subsequently called out over the radio. Detective Reese learned that the two men had stolen Hay's cell phone; the detective requested authorization from Hay's cell phone provider to track the phone. The detective traced the phone to Monticello Boulevard and located a red Chevy Blazer, which was registered to a Jeremy Merritt at 3808 Delmore. The police effectuated a traffic stop and identified the driver of the car as Alexander Hawkins.

{¶ 11} Officer Alvis canvassed the area south of AutoZone, the same general area where Rocky had traced a scent. A witness told Officer Alvis that he had seen a man pacing around a "beat-up" red Blazer. Alvis took the witness to Monticello Blvd. and the witness identified Merritt's Blazer as the same vehicle he had earlier seen.

{¶ 12} Detective Reese investigated the 911 call that sent officers to Hollister Avenue at the same time as the AutoZone robbery. He traced the 911 call to Brenda Lash, who lived at 3808 Delmore. The police went to conduct surveillance on the residence and observed two cars, a Monte Carlo and a Lexus, pull out of the driveway. The cars split off in separate directions and officers followed the Monte Carlo. Sergeant Speece set up a roadblock and the Monte Carlo was stopped. The officers identified Lash as the driver and Jeremy Merritt as the passenger. Lash told the officers that he was a valid CCW permit holder and had a weapon in the center console. During a subsequent search of the Monte Carlo, police recovered a bag of black latex gloves, which they believed matched those recovered at the crime scene and later at 3808 Delmore, as well as a black-hooded sweatshirt and a bucket style hat that matched the description of a hat worn by one of the assailants.

{¶ 13} Officer Lasker pursued the Lexus. The officer stopped the Lexus and identified the driver as Leontae Jones, who was also a valid CCW permit holder. The officer recovered a gun from the car.

{¶ 14} Officers went to speak with Brenda Lash, Lash's mother, who lived at 3808 Delmore with her boyfriend, children (including Lash), and Jeremy Merritt. She denied placing the call to 911 for the fight on Hollister, and permitted police to photograph the call log on her phone. While photographing the log, police were

able to confirm phone numbers for both Lash and Jeremy Merritt. Brenda then permitted the police to search her son's bedroom and the basement, where Jeremy Merritt stayed. Police found a pair of handcuffs with the serial number scratched off on Lash's bed and a handgun in Lash's dresser. Brenda testified that the handcuffs belonged to her 13–year–old son. Police also found a shopping bag, boxes for two pairs of handcuffs, and handcuff keys in the basement.

{¶ 15} Detective Reese found two receipts on Lash's person from AutoZone stores while booking him into the Cleveland Heights jail. One receipt was from Superior Avenue near East 79 Street in Cleveland and the other was from Euclid Avenue in East Cleveland. Both receipts were time-stamped the afternoon of August 16, 2015, the same day as the robbery at the AutoZone. Both receipts were for the purchase of rolls of duct tape.

{¶ 16} Lash testified at trial. He testified that he had never seen the handcuffs the police found on his bed. He testified that the bucket hat located in his car at the time of his arrest belonged to Leontae Jones, and that just before they left 3808 Delmore and were pulled over by the police, Jones gave him the hat as partial payment for $30 that Jones owed him.

{¶ 17} Lash explained the two AutoZone receipts as follows. He testified that he and his girlfriend went to the AutoZone on Superior Avenue to purchase RainEx, but the store was too crowded so they did not go inside. They then drove to the store on Euclid Avenue where they bought the RainEx with cash, but Lash did not have the receipt because he "probably" left it in his girlfriend's car. He denied ever purchasing duct tape at those two locations on August 16, 2015, and explained that Jones gave him the receipts for the duct tape so Lash could return the duct tape and keep the cash for fulfillment of the $30 debt.

{¶ 18} The jury convicted Lash of all counts, except theft. After the court determined that the robbery and kidnapping counts merged, the court sentenced Lash to six years for aggravated robbery plus three years for the firearm specification concurrent to six years for kidnapping plus three years for the firearm specification, and 24 months for tampering with evidence. The court ran each six year sentence on the underlying counts concurrent to each other, but consecutive to the 24 month sentence for tampering with evidence for a total aggregate sentence of 14 years.

*State v. Lash*, 92 N.E.3d 316, 318–20 (Ohio Ct. App. 2017) ("*Lash I*").

In August 2015, a Cuyahoga County grand jury indicted Petitioner on one count of aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(1) (Count 1), one count of robbery in violation of § 2911.02(A)(1) (Count 2), one count of kidnapping in violation of §

2905.01(A)(2) (Count 3), one count of kidnapping in violation of § 2905.01(A)(1) (Count 4), one count of petty theft in violation of § 2913.02(A)(1) (Count 5), and one count of tampering with evidence in violation of § 2921.12(A)(1) (Count 6); the charges carried various firearm and forfeiture specifications. (Ex. 1, Doc. 5-1, at 3-8).

A jury found Petitioner guilty on all but the petty theft charge on May 12, 2016. (Ex. 2, Doc. 5-1, at 9). At sentencing, the trial court merged the robbery and aggravated robbery counts and merged the two kidnapping counts. (Ex. 3, Doc. 5-1, at 10). The State elected to proceed to sentencing on Counts 1, 4, and 6. *Id.* The trial court sentenced Petitioner to an aggregate sentence of fourteen years imprisonment. *Id.*[1]

Direct Appeal

Petitioner – through new counsel – filed a timely notice of appeal with the Ohio Eighth District Court of Appeals. (Ex. 4, Doc. 10-1, at 12-18). In his appellate brief, he raised four assignments of error:

1. The court erred in entering a judgment of conviction of kidnapping in Count 4 of the indictment, as the evidence was insufficient to sustain the verdict.

2. The court erred in entering a judgment of conviction of tampering with evidence as the evidence was insufficient to sustain the verdict.

3. The court erred in sentencing the defendant on both the merged robbery convictions and the merged kidnapping convictions, as those offenses were allied offenses of similar import.

4. The record clearly and convincingly fails to support the imposition of consecutive sentences.

---

1. The trial court sentenced Petitioner to: (1) six years on Count 1 (aggravated robbery), plus three years for the firearm specification; (2) six years on Count 4 (kidnapping), plus three years on the firearm specification; the six years was to run concurrent to Count 1, but the three-year firearm sentence was consecutive; and (3) 24 months on Count 6 (evidence tampering), consecutive to Counts 1 and 4. (Ex. 3, Doc. 5-1, at 10).

(Ex. 5, Doc. 10-1, at 19-38). The State filed a brief in opposition (Ex. 6, Doc. 10-1, at 40-59), and on June 15, 2017, the appellate court overruled Petitioner's first three assignments of error, but sustained the fourth in part (Ex. 7, Doc. 5-1, at 60-79); *Lash I*, 92 N.E.3d 316.[2] The case was remanded to the trial court "to enter a nunc pro tunc entry setting forth the applicable consecutive findings made at the sentencing hearing." *Lash I*, 92 N.E.3d at 325. The trial court subsequently did so on April 30, 2018. (Ex. 19, Doc. 5-1, at 203-04).

Proceeding *pro se*, Petitioner filed a timely notice of appeal with the Ohio Supreme Court. (Ex. 8, Doc. 5-1, at 80-81). In his memorandum in support of jurisdiction, he set forth three propositions of law:

1. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. This doctrine requires more than a simple trial ritual. It must also require that the factfinder will rationally apply the standard to the facts in evidence. This standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. Jackson v. Virginia, 443 U.S. 307.

2. Ohio does not recognize the unmistakable crime doctrine in connection with the offense of tampering with the evidence because that doctrine erroneously imputes to the perpetrator constructive knowledge of a pending or likely investigation into a crime. Merely establishing that the crime committed is an unmistakable crime is insufficient to prove that the time that the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted. State v. Barry, 145 Ohio St. 3d 354.

---

2. The appellate court explained:

> We cannot clearly and convincingly find that the record does not support the trial court's findings, but agree that the trial court failed to incorporate its findings into the journal entry per *Bonnell*. Instead, the trial court put another reason pursuant to R.C. 2929.14(C)(4) in the journal entry, which was clearly a clerical error. Thus, the matter is remanded to the trial court to enter a nunc pro tunc entry setting forth the applicable consecutive sentence findings made at the sentencing hearing. *Bonnell* at ¶ 30.

*Lash I*, 92 N.E.3d at 325.

3. At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. State v. Ruff, 143 Ohio St. 3d 114.

(Ex. 9, Doc. 5-1, at 82-92). The State filed a waiver of memorandum in response (Ex. 10, Doc. 5-1, at 113), and on November 1, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal (Ex. 11, Doc. 5-1, at 114).

Application to Reopen

In September 2017, while his direct appeal was pending, Petitioner filed a *pro se* application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 12, Doc. 5-1, at 115-25). Therein, he alleged his appellate counsel was ineffective for failing to include the following assignments of error on direct appeal:

1. A criminal defendant's right to due process, as guaranteed by the Fif[th] and Fourteenth Amendments to the United States Constitution, and comparable provisions of the Ohio Constitution is violated when convicted of aggravated robbery [and] kidnapping in the absence of evidence sufficient to support a finding of guilty.

2. A criminal defendant's right to due process, as guaranteed by the Ohio Constitution, is violated when convicted despite the greater weight of the credible evidence at trial supporting a finding of not guilty.

3. The trial court erred and abused its disc[re]tion by allowing hearsay statements [to] be read to the jury violating Appellant's right to confrontation under the Sixth Amendment.

*Id.* (capitalization altered). The State filed a brief in opposition (Ex. 13, Doc. 5-1, at 139-45), and on April 6, 2018, the appellate court denied Petitioner's application to reopen (Ex. 14, Doc. 5-1, at 146-56); *State v. Lash*, 2018 WL 1778654 (Ohio Ct. App) ("*Lash II*").

Petitioner filed a timely appeal of this denial to the Ohio Supreme Court. (Ex. 15, Doc. 5-1, at 157-58). He set forth three propositions of law in his memorandum:

1. The Appellant received ineffective assistance of appellate counsel when counsel failed to raise multiple issues on direct review, causing them to be procedurally defaulted.

2. A criminal defendant's right to due process, as guaranteed by the Fifth and Fourteenth amendments to the United States Constitution, and comparable provisions of the Ohio Constitution, is violated when convicted of aggravated robbery and kidnapping in absence of evidence to support a finding of guilt, which are further violated when convicted on all counts despite greater weight of credible evidence supporting a finding of not guilty.

3. The trial court erred and abused its discretion by allowing hearsay statements to be read to the jury violating Appellant's Constitutional right to confrontation under the Sixth Amendment.

(Ex. 16, Doc. 5-1, at 159-68) (capitalization altered). The State filed a waiver of memorandum in response. (Ex. 17, Doc. 5-1, at 201). On July 11, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Ex. 18, Doc. 5-1, at 202).

### FEDERAL HABEAS CORPUS

In the instant Petition, filed July 8, 2019[3], Petitioner presents four grounds for relief:

**GROUND ONE**: The Petitioner's right to Due Process as guaranteed by the Fifth and Fourteenth Amendments to the United S[t]ates Constitution is violated when he is convicted absen[t] evidence sufficient to support the finding of guilty.

**GROUND TWO:** The trial court erred in sentencing Petitioner on both the merged robbery and the merged kidnapping convictions, as those offenses were allied offenses of similar import, a Double Jeopardy violation.

---

3. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 15 (representing Petition was placed in the prison mailing system on July 8, 2019).

**GROUND THREE**: Petitioner's Constitutional right to confrontation under the Sixth Amendment is violated when hearsay statements are read to the jury.

**GROUND FOUR**: The Petitioner received ineffective assistance of appellate counsel when counsel failed to raise multiple issues [on] direct review, causing them to be procedurally defaulted.

(Doc. 1-4, at, 1-5) (capitalization altered).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102

(2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

The Petition pending before the Court raises four grounds for relief. Respondent contends Ground One is in part procedurally defaulted, and in part fails on the merits; Ground Two is non-cognizable or meritless; Ground Three is procedurally defaulted, and alternatively meritless; and Ground Four fails on the merits. For the reasons discussed below, the undersigned recommends the Petition be dismissed in its entirety.

Ground One

In Ground One, Petitioner asserts the evidence was insufficient to support his kidnapping, evidence tampering, and aggravated robbery convictions. Respondent asserts that Petitioner's aggravated robbery insufficiency claim is procedurally defaulted for failure to raise it on direct appeal, and, regardless, all three claims fail on the merits. For the reasons discussed below, the undersigned agrees with Respondent.

When reviewing insufficient evidence claims, a court must first determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). And on habeas review, even if the federal court concludes that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, the court must defer to a state appellate court's sufficiency determination if it is not unreasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). In applying this standard, the federal court is bound by the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Due process is satisfied as long as the evidence presented is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

*Aggravated Robbery – Procedural Default*

Petitioner challenges the sufficiency of the evidence to support his aggravated robbery conviction. This claim is procedurally defaulted.

A petitioner must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*,

11

526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See id.*; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971).

Unexhausted claims that can no longer be raised to a state appellate court are procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). A petitioner can overcome default by showing some cause for neglecting the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

On direct appeal, Petitioner challenged the sufficiency of the evidence of his kidnapping and evidence tampering convictions, but did not challenge the sufficiency of the evidence as to his aggravated robbery conviction. *See* Ex. 5, Doc. 10-1, at 19-38; Ex. 9, Doc. 10-1, at 82-92. This claim was based on the trial record, and therefore should have been raised on direct appeal. *See Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967)). Petitioner raised a challenge to the sufficiency of the evidence as to his aggravated robbery conviction for the first time in his Ohio Appellate Rule 26(B) application to reopen. *See* Ex. 12, Doc. 5-1, at 118-21. But raising a claim for the first time in a Rule 26(B) application does not preserve that underlying claim for federal habeas review. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[B]ringing an ineffective assistance claim in state court based on counsel's failure

to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct'.") (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)).

However, a non-defaulted ineffective assistance of counsel claim can constitute excusing cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Such a claim, however, "can serve as cause for the procedural default of his other claims only if [the petitioner] can demonstrate that his appellate counsel was constitutionally ineffective." *Buell v. Mitchell*, 274 F.3d 337, 351-52 (6th Cir. 2001) (citing *Edwards*, 529 U.S. at 451). "To do so, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

A defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). For such claims, Petitioner must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *See Strickland*, 466 U.S. at 687. An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted). And "appellate counsel cannot be considered ineffective for failing to raise a meritless claim". *Kelly v. Lazaroff*,

846 F.3d 819, 831 (6th Cir. 2017); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)

("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

Through this lens, the state appellate court addressed Petitioner's claim:

{¶ 5} In his first proposed assignment of error, Lash argues that his appellate counsel was ineffective in failing to challenge his aggravated robbery conviction, and to the extent that his appellate counsel did challenge the kidnapping conviction, counsel did not do so effectively. We find this argument to have no merit.

{¶ 6} Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 7} Lash was convicted of aggravated robbery under R.C. 2911.01(A)(1), which provides as follows:

> No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

{¶ 8} According to Lash, his aggravated robbery conviction cannot stand because the record lacks any direct evidence that (1) places him at the scene with a deadly weapon, or (2) establishes him using force while committing or attempting to commit a theft offense. We find this argument to have no merit.

{¶ 9} Lash appears to erroneously believe that the state needed to present only direct evidence in the form of forensic or eyewitness testimony that identified him "at the scene with a deadly weapon, using force while committing or attempting to commit a theft offense." But that is not the standard. Circumstantial evidence carries the same probative value as direct evidence. *See State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011–Ohio–1060, ¶ 18, citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988) ("Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.").

14

{¶ 10} Moreover, Lash's argument is also fatally flawed because it fails to appreciate that the state's case against him was predicated on his aiding and abetting in the commission of the aggravated robbery and kidnapping.[] Indeed, "a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission * * *." *State v. Herring*, 94 Ohio St.3d 246, 251, 2002–Ohio–796, 762 N.E.2d 940. Under Ohio's complicity statute, R.C. 2923.03(A)(2), Lash could be found guilty if he acted in complicity with another person in committing these offenses by aiding and abetting that other person. To support a conviction based upon a defendant's complicity by "aiding and abetting" another in committing an offense under R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus.

{¶ 11} Based on the testimony in the record and viewing the evidence in the light most favorable to the state, a rational trier of fact could find Lash guilty of aggravated robbery beyond a reasonable doubt. Indeed, apart from the text messages connecting Lash and the codefendants to the crimes and the timing and location of the police's apprehension of the defendants following the reported crimes, the police found significant physical evidence linking Lash to the crimes, such as handcuffs, receipts for duct tape purchased on the same day as the robbery, black latex gloves, and a bucket-style hat that matched the description of a hat worn by one of the assailants.

* * *

{¶ 14} Lash's first proposed assignment of error is overruled.

*Lash II*, 2018 WL 1778654, at *2-3 (footnote omitted).

The state appellate decision cited state caselaw interpreting *Jackson* (*Jenks*, 61 Ohio St. 3d 259), and then faithfully applied *Jackson*'s framework for a sufficiency claim. *Compare Lash II*, 2018 WL 1778654, at *2-3, *with Jackson*, 443 U.S. at 319. And the court's ultimate conclusion that a rational trier of fact could have found Petitioner guilty of aggravated robbery is reasonable. Petitioner argues to this Court – as he did to the state court – that "[t]here is no direct evidence that places the petitioner at the crime scene in any way, but the State's theory of the crime was his direct involvement from indictment to opening statement." (Doc. 11, at 5). He contends that the State changed its theory at trial "by requesting for an [a]iding and abetting instruction." *Id.* The

state court rejected Petitioner's sufficiency claim, finding sufficient circumstantial and direct evidence supported Petitioner's conviction. *Lash II*, 2018 WL 1778654, at *2. Specifically, the state court – interpreting state law – noted first, Ohio's complicity statute, Ohio Revised Code 2923.03(A)(2), meant Petitioner could be convicted of the substantive offense based on aiding and abetting[4], and second, "significant physical evidence link[ed] Lash to the crimes, such as handcuffs, receipts for duct tape purchased on the same day as the robbery, black latex gloves, and a bucket-style hat that matched the description of a hat worn by one of the assailants." *Id.* As noted on direct appeal, the gloves and hat were located during the search of a car driven by Petitioner, the duct tape receipts were in Petitioner's possession, and a set of handcuffs were found on his bed. *See Lash* I, 92 N.E.3d at 319-20. These findings of fact are entitled to deference. *See* 28 U.S.C. § 2254(e)(1).

Petitioner focuses on testimony and evidence to the contrary. But a court "faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. "The jury in this case was convinced, and the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 2012). The Ohio Court of Appeals reasonably determined that the jury's verdict did not fall below that low standard. And even if it were close, the state court's "determination in turn [would be] entitled to considerable deference under AEDPA." *Id.*

---

4. The state court noted Petitioner "was indicted along with three codefendants—Leontae Jones, Alexander Hawkins, and Jeremy Merritt—and the jury was given an aiding and abetting instruction as to Lash's role in the offense." *Lash II*, 2018 WL 1778654, at *2 n.1.

The appellate court thus found that counsel did not perform deficiently, nor could Petitioner show resulting prejudice because the underlying sufficiency claim lacked merit. *See Lash II*, 2018 WL 1778654, at *4 ("[A]ll three of Lash's proposed assignments of error have no merit. Accordingly, Lash cannot meet his burden under App.R. 26(B)(5) to demonstrate 'a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal.'"). This is not an unreasonable application of federal law, because failure to raise meritless claims cannot violate *Strickland*. *See Kelly*, 846 F.3d at 831; *Coley*, 706 F.3d at 752. Because Petitioner cannot show his appellate counsel violated *Strickland* in failing to raise this claim, it cannot serve as cause to excuse his procedural default. *See Edwards*, 529 U.S. at 451 (to serve as cause, ineffectiveness must rise to the level of a Sixth Amendment violation). As such, the undersigned recommends the Court find this part of Ground One – asserting insufficiency of the evidence to support the aggravated robbery conviction – procedurally defaulted.

### Kidnapping and Evidence Tampering

By contrast, Petitioner did raise sufficiency of the evidence claims as to his kidnapping and evidence tampering convictions on direct appeal. *See* Ex. 5, Doc. 10-1, at 29-31; Ex. 9, Doc. 10-1, at 88-90. These claims are thus preserved for federal habeas review. However, as discussed below, the undersigned finds both fail on deferential AEDPA review.

### Kidnapping

The Ohio appellate court addressed Petitioner's sufficiency claim as to his kidnapping convictions as follows:

{¶ 20} In the first assignment of error, Lash argues that the evidence was insufficient to support his convictions for kidnapping.

{¶ 21} When reviewing a challenge of the sufficiency of the evidence, we examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. *State v. Jenks*, 61 Ohio St.3d 259, 263, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus.

{¶ 22} A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. This test involves a question of law and does not allow us to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 23} Lash was convicted of kidnapping, pursuant to R.C. 2905.01(A)(1) and (A)(2), which state that:

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
>> (1) To hold for ransom, or as a shield or hostage;
>> (2) To facilitate the commission of any felony or flight thereafter[.]

{¶ 24} Lash argues that the evidence was insufficient to support his conviction under either R.C. 2905.01(A)(1) or (A)(2), but does not discuss why the evidence did not support his conviction under R.C. 2905.01(A)(2) or support that argument with any citations to the record or to authority as required by App.R. 12(A)(2) and 16(A).

{¶ 25} Lash argues that the evidence was insufficient to support his conviction for kidnapping under R.C. 2905.01(A)(1) because the state did not provide any evidence to support the claim that Hay was kidnapped for the purpose of using him as a human shield or hostage.

{¶ 26} Hay testified that he was taking out the store's trash when he was approached by two assailants with guns. The two men took him around the back side of the trash corral, told him to get on his knees, grabbed his arms, put his arms behind his back, put him in handcuffs, and then took a roll of duct tape and covered his eyes, mouth, and ears, and wrapped it around his head. Hay further testified that one of the men held the gun to his neck or head the entire time. The two men repeatedly told Hay not to move or they would kill him.

{¶ 27} In *State v. Sanders*, 8th Dist. Cuyahoga No.75398, 2000 WL 377505 (Apr. 13, 2000), three assailants planned to kidnap and rob a store owner and his girlfriend. The men waited for the victims to exit the store when they approached with guns. Both victims were ordered to their knees. The store owner was placed

in handcuffs, while one of the assailants attempted to duct tape the girlfriend's hands behind her back. The robbery was thwarted when the store owner was able to gain access to the weapon the defendant had placed on the ground. The jury convicted the defendant of kidnapping under R.C. 2905.01(A)(1) and this court affirmed the conviction. *Id.* at *6.

{¶ 28} Based on the testimony in the record and viewing the evidence in the light most favorable to the state of Ohio, a rational trier of fact could find Lash guilty of each element of the offense of kidnapping beyond a reasonable doubt.

{¶ 29} The first assignment of error is overruled.

*Lash I*, 92 N.E.3d at 321-22.

Petitioner contends the evidence was insufficient to demonstrate the victim was kidnapped "[t]o hold for ransom, or as a shield or hostage" as required by Ohio Revised Code § 2905.01(A)(1). But the undersigned cannot find the state court decision to the contrary unreasonable. The state court found that the actions of ordering the victim to his knees, restraining him, holding a gun to him, and repeatedly telling him not to move "or they would kill him" was sufficient to show the victim had been held hostage under this subsection. *Lash I*, 92 N.E.3d at 321-22. And, this Court is bound by a state court's determination regarding state law. *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002) ("'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'") (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). The undersigned finds the state court determination is not contrary to, or an unreasonable application of *Jackson*. "[A]fter viewing the evidence in the light most favorable to the prosecution, [a] rational trier of fact could have found the essential elements of the crime" – including that the victim was held hostage – "beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Brown*, 567 F.3d at 205 (state court determination is entitled to deference if not unreasonable). As such, the undersigned recommends

the court find this part of Ground One – asserting insufficiency of the evidence to support the kidnapping conviction in Count 4 – meritless on AEDPA review.[5]

Evidence Tampering

The state appellate court also addressed Petitioner's challenge to the sufficiency of his evidence tampering conviction on direct appeal:

{¶ 30} In the second assignment of error, Lash claims that the evidence was insufficient to support his conviction for tampering with evidence.

{¶ 31} Lash was convicted of tampering with evidence for scratching the serial numbers off the handcuffs in violation of R.C. 2921.12(A)(1), which provides:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

{¶ 32} The Ohio Supreme Court has outlined three elements of the offense of tampering with evidence: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

_____

5. To the extent Petitioner challenges the sufficiency of the evidence of his kidnapping conviction in Count 3 based on Ohio Revised Code § 2905.01(A)(2), that claim is procedurally defaulted for failure to raise it on direct appeal. *See Lash I*, 93 N.E.3d at 321 ("Lash argues that the evidence was insufficient to support his conviction under either R.C. 2905.01(A)(1) or (A)(2), but does not discuss why the evidence did not support his conviction under R.C. 2905.01(A)(2) or support that argument with any citations to the record or to authority as required by App.R. 12(A)(2) and 16(A)."). When Petitioner attempted to raise a claim that his appellate counsel ineffectively argued this claim on direct appeal, the state court rejected it. *See Lash II*, 2018 WL 1778654, at *3. In so doing, the state court found that counsel was not ineffective, because the underlying sufficiency claim lacked merit. *See id.* The undersigned finds the state court analysis was not an unreasonable application of *Jackson*, nor was it an unreasonable application of *Strickland* to find counsel was not ineffective for failing to argue this claim on direct appeal. *See Kelly*, 846 F.3d at 831; *Coley*, 706 F.3d at 752.

{¶ 33} In *Straley*, the defendant's car was stopped for a traffic violation. Upon further investigation, the police suspected she was driving under the influence of alcohol. When the detectives were trying to find her a ride home, she insisted that she needed to go to the bathroom. She ran to the side of a building in order to do so. One of the detectives later found a urine-soaked baggie containing crack cocaine in the area. The Ohio Supreme Court held that her conviction was not supported by sufficient evidence, because there was nothing in the record to suggest that police were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie. *Id.* at ¶ 19.

{¶ 34} Lash argues that there was no likelihood of an investigation at the time the serial numbers were scratched of the handcuffs because the crime was still in the planning stages at that time. The state argues that the record demonstrates that the handcuffs were purchased for the express purpose of robbing AutoZone. To support its position, the state points to the discovery of two empty handcuff boxes in Lash's house and the text messages between Jones and Lash. Jones texted Lash on August 12 telling Lash he was going to the "cuff store," and again on August 13 that he "got cuffs." The state argues that Lash and his codefendants purchased matching handcuffs as part of their plan to rob AutoZone; the two sets of handcuffs were part and parcel to the crime. According to the state, as part of the robbery, police would likely be called, and an investigation would likely follow, including the processing of the matching handcuffs. Both sets of handcuffs had serial numbers that were scratched beyond recognition. The state posits that there was no other purpose for obliterating the serial numbers on the matching handcuffs except to prevent police from attempting to connect the pairs of handcuffs to each other, possibly their purchase, and thereby the purchaser of the handcuffs.

{¶ 35} "Likelihood is measured at the time of the act of alleged tampering." *Straley* at *id.* In this case, the evidence showed that the handcuffs were purchased on August 13, 2015, three days prior to the kidnapping and robbery. Thus, Lash and his codefendants scratched off the serial numbers on the handcuffs within the three days prior to the robbery. Is that act sufficient to show proof that Lash intended to impair the value or availability of evidence as it related to a likely official investigation? We believe that under the unique circumstances of this case, it is. Unlike many tampering with evidence cases, where there is a single actor who attempts to destroy evidence immediately before or after apprehension, in this case, the evidence showed that the four codefendants were in communication in the days leading up to the crime, plotting a complex and violent crime. Their plan included casing the AutoZone and using firearms, duct tape, and handcuffs to subdue the people working in the AutoZone store to steal money. Lash, as a former AutoZone employee, knew the inner workings of that store.

{¶ 36} Based on these facts, the likelihood is high that a police investigation would follow a kidnapping and robbery involving firearms, duct tape, and handcuffs. The likelihood is certainly high enough when viewing the evidence in the light most favorable to the state. Therefore, we find a rational trier of fact could find Lash

guilty of each element of the offense of tampering with evidence beyond a reasonable doubt.

{¶ 37} The second assignment of error is overruled.

*Lash I*, 92 N.E.3d at 322-23.

As he did to the state court, Petitioner argues there was insufficient evidence to support Ohio Revised Code § 2921.12(A)(1)'s requirement that an individual believe an investigation is "likely to be instituted" at the time the tampering occurs. *See* Doc. 1-4, at 2-3; Doc. 11, at 3-4. Petitioner argues that the appellate court "failed to follow the ruling set out by the Ohio Supreme Court in *State v. Barry*, 145 Ohio St.3d 354 [(2015)], and erroneously imputed knowledge of a pending or likely investigation into a crime on the petitioner." (Doc. 11, at 3). He further contends the state court misapplied the state case of *State v. Straley*, 139 Ohio St. 3d 339 (2013). *Id.*

*Barry* involved drug trafficking. *See* 145 Ohio St. 3d at 361-62. When the defendant in that case hid heroin "only her coconspirators were present and could have reported her drug offenses, and nothing in the record shows that she thought it likely that she would be stopped by law enforcement." *Id.* at 361. And the state appellate court explained how *Straley* involved distinguishable facts. *See Lash I*, 93 N.E.3d at 322-23. By contrast here, as the state court emphasized, the communications prior to crime and the purchasing and altering of handcuffs as part of that plan permit a rational jury to conclude Petitioner was aware, at the time the handcuffs were altered, that an investigation was likely to be instituted. *Id.* The Ohio Court of Appeals' adjudication of Petitioner's sufficiency claim involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial. That is, the state court rationale aligns with *Jackson*'s requirement that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime" – including that Petitioner had reason to

believe an investigation was likely to be instituted – "beyond a reasonable doubt." 443 U.S. at 319. And again, even if there were a close call, this Court must defer a state appellate court's sufficiency determination if it is not unreasonable. *Brown*, 567 F.3d at 205. The undersigned therefore recommends that this portion of Ground One – asserting insufficiency of the evidence as to the evidence tampering conviction – be denied.

Ground Two

In Ground Two, Petitioner asserts a double jeopardy violation. He contends the trial court erred in sentencing him on both the robbery and kidnapping convictions, as they were committed with the same animus. Respondent contends that this is, at base, a non-cognizable question of state law. For the reasons discussed below, the undersigned recommends Ground Two be denied.

The state appellate court addressed this claim on direct appeal:

{¶ 40} Lash argues that his convictions for kidnapping should have merged into his conviction for aggravated robbery because his kidnapping of Hay was committed with the same animus as the aggravated robbery of Hay or AutoZone (the indictment lists both Hay and AutoZone as victims). R.C. 2941.25(B) provides that when a defendant's conduct constitutes two or more offenses of dissimilar import, the defendant may be convicted of all of the offenses. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 16. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

{¶ 41} The state argues that the two crimes were committed with separate animuses: one animus was to kidnap Hay in order to facilitate the second crime of aggravated robbery of AutoZone.

{¶ 42} Lash cites *State v. Ranzy*, 8th Dist. Cuyahoga No. 97275, 2012-Ohio-2763, 2012 WL 2355634, to support his position that the offenses of aggravated robbery and kidnapping should be merged. In *Ranzy*, the victim left his apartment and walked to his car. He was approached by his former girlfriend and another man he knew; they demanded his car keys. The victim offered them $20. The girlfriend told the victim to give them his car keys or the other man would shoot him. The victim tackled the assailant with the gun, but was shot in the head. He was able to get away, but not before being shot a second time, in the shoulder. *Id.* at ¶ 5. This court held that the evidence established that the offenses were committed with a

23

"single state of mind" and that the restraint was merely incidental to the defendant's intention to rob the victim at gunpoint. *Id.* at ¶ 71.

{¶ 43} *Ranzy* is distinguishable from this case. Here, the two assailants waited for Hay to exit the AutoZone, approached him, pointed guns at him, handcuffed him, bound him, threatened to kill him, and then left him. At that point, the offense of kidnapping was complete. The assailants then moved on to rob the AutoZone store; that robbery was interrupted. The kidnapping of Hay was planned and executed with a separate animus from what the assailants planned to do once inside the AutoZone.

{¶ 44} Moreover, because the aggravated robbery charge lists AutoZone as a victim in the alternative, and Lash did not object to the indictment, he has waived his right to challenge the fact that there are two separate and identifiable victims to the crimes. Therefore, his conduct also constitutes offenses involving separate victims pursuant to R.C. 2941.25(B).

{¶ 45} Therefore, the trial court did not err when it did not merge the aggravated robbery and kidnapping convictions. The third assignment of error is overruled.

*Lash I*, 92 N.E.3d at 323-24.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protect against, *inter alia*, multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The Double Jeopardy Clause is applicable to the States through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794 (1969). It prevents the sentencing court from prescribing greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). Whether a conviction violates the Double Jeopardy Clause is, therefore, a matter of legislative intent, and a habeas court is bound by a state court's determination as to whether the state legislature intended multiple punishments for a single criminal incident. *Volpe v. Trim*, 708 F.3d 688, 696-97 (6th Cir. 2013); *see also Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014) ("[S]imply because the state court's assessment of the

legislature's intent was wrong does not mean that Jackson is eligible for federal habeas relief. The Supreme Court has made clear that the *only* question that matters under § 2254(d)(1) is whether the state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law.") (internal quotation and citation omitted).

Ohio law regarding multiple punishments provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25.

Applying this law, the state court concluded the two crimes at issue here –kidnapping, and robbery – were: (1) committed with a separate animus, and (2) involved "separate and identifiable victims". *Lash I*, 92 N.E.3d at 324. Petitioner disagrees, arguing that the "evidence fails to show a separate animus for the kidnapping" and that it was "not done with a separate purpose, but as part and parcel of the aggravated robbery of the store." (Doc. 1-4, at 4); *see also* Doc. 11, at 6-8. Petitioner thus argues that failure to merge his sentences for the two crimes violates the constitutional prohibition against double jeopardy.

Petitioner's argument, however, is centered on his interpretation of *state* law jurisprudence as applied to his case – that is, whether he could be separately punished for these two convictions. *See* Doc. 11, at 6-8. But the state court's determination of this state law issue is determinative. *See Jones v. Harry*, 405 F. App'x 23, 29 (6th Cir. 2010) ("We owe the Michigan courts deference even if, as seems to be the case, Jones's appeal was the first time that they ruled on the issue. Because

25

'the only question for the [Michigan] Court of Appeals was what the legislature had intended,' any error in its reasoning 'is purely a matter of state law.'") (quoting *McCloud v. Deppisch*, 409 F.3d 869, 874 (7th Cir. 2005)); *Volpe*, 708 F.3d at 696-97; *Jackson*, 745 F.3d at 214. As the Sixth Circuit explained: "With the focus correctly on what the Ohio Court of Appeals actually *did* in this matter—it discerned the Ohio legislature's intent by applying Ohio's allied offenses statute—there can be no doubt that its decision falls outside § 2254(d)(1)'s narrow exceptions to the bar on federal habeas relief, thus rendering [the petitioner] ineligible for relief." *Jackson*, 745 F.3d at 214-15. Further, to the extent Petitioner argues the state court's decision "was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings", 28 U.S.C. § 2254(d)(2), the undersigned disagrees. The state court found, factually, that Petitioner committed the crimes with a separate animus as the kidnapping was complete before the robbery commenced. *See Lash I*, 93 N.E.3d at 324. This is not an unreasonable determination of the facts presented, even if Petitioner can present the facts in a different light and reach the opposite conclusion. Moreover, the state court alternatively found that multiple punishments were authorized because the crimes involved separate victims, noting Petitioner had waived any challenge in this regard by failing to object to the indictment. *Id.*

As Petitioner has not shown the state court decision to be contrary to, or an unreasonable application of federal double jeopardy law, or an unreasonable determination of the facts in light of the evidence presented, the undersigned recommends Ground Two be denied.

Ground Three

In Ground Three, Petitioner asserts a Confrontation Clause violation. Respondent contends this claim is procedurally defaulted and without merit.

26

Petitioner argues his Confrontation Clause rights were violated by the admission of text messages without authentication at trial. (Doc. 1-4, at 5). Petitioner did not raise this claim on direct appeal. *See* Ex. 5, Doc. 10-1, at 19-38; Ex. 9, Doc. 5-1, at 82-92. Instead, he raised this claim for the first time in his Rule 26(B) application for reopening, arguing appellate counsel was ineffective for failing to raise it on direct appeal. *See* Ex. 13, Doc. 5-1, at 122-24.

This claim was based on the trial record, and therefore should have been raised on direct appeal. *See Seymour*, 224 F.3d at 555 (citing *Perry*, 10 Ohio St. 2d at 180). And raising a claim for the first time in a Rule 26(B) application does not preserve that underlying claim for federal habeas review. *Davie*, 547 F.3d at 312. Ground Three is thus procedurally defaulted and may not be considered unless Petitioner can show cause and prejudice to overcome the default. *See Bonilla*, 370 F.3d at 498.

Again, constitutionally ineffective assistance of appellate counsel can serve as cause to overcome procedural default. *Buell*, 274 F.3d at 351-52. The state appellate court addressed this claim in review of Petitioner's 26(B) application:

> {¶ 18} In his final proposed assignment of error, Lash argues that the trial court erred in allowing Detective Michael Reese to read "text messages allegedly from Leontae Jones" to Lash over defense counsel's objection. According to Lash, the text messages constituted hearsay and the admission of such statements violated his right to confrontation guaranteed by the Sixth Amendment. Lash further argues that the text messages were never properly "authenticated" because "Jones never testified that he wrote them."
>
> {¶ 19} According to Lash, the admission of Jones's text messages to Lash violates the holding in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because it deprived Lash the right to confront Jones as guaranteed by the Sixth Amendment to the United States Constitution. In *Bruton*, the United States Supreme Court held that the confession of a codefendant who exercises his or her Fifth Amendment right not to testify is not admissible against the other defendant because that defendant has no opportunity to cross-examine the confessing codefendant. The rule in *Bruton*, however, does not apply to non-hearsay statements made by a co-conspirator in furtherance of a conspiracy. *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012–Ohio–4047, ¶ 30, citing *United*

*States v. Inadi*, 475 U.S. 387, 398, 106 S.Ct. 1121, 89 L.Ed.2d 390,(1986) fn. 11 (stating that non-hearsay does not violate the defendant's right to confront witnesses).

{¶ 20} Here, the record reflects that the text messages from Jones to Lash fall under the exception of hearsay contained in Evid.R. 801(D)(2)(e) and that there was prima facie evidence of conspiracy between Lash and Jones (as well as the other codefendants) independent of Jones's text messages. Accordingly, the trial court properly admitted this evidence at trial.

{¶ 21} As for Lash's authentication challenge, we likewise find no merit. Evid.R. 901, which concerns authentication, provides that "[t]he requirement of authentication * * * as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "Authentication under Evid.R. 901 is a low threshold—the rule requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014–Ohio–2048, ¶ 33, citing *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013–Ohio–1548, ¶ 21. Aside from Lash's never raising an objection on authentication grounds in the trial court, Lash testified to the authenticity of the texts. Indeed, Lash testified on direct as to receiving the texts and their purported meaning. Moreover, Lash's argument alleging a lack of proof that Jones had actually sent the message concerns the weight of the evidence, rather than its authenticity. *See State v. Huge*, 1st Dist. Hamilton No. C–120388, 2013–Ohio–2160,¶ 29.

{¶ 22} Under the facts of this case, there is simply no basis to raise an authentication challenge of the text message nor does the record support a *Bruton* challenge.

{¶ 23} The third proposed assignment of error is overruled.

*Lash II*, 2018 WL 1778654, at *3-4.

To the extent Petitioner argues that this testimony was improperly admitted hearsay or was not properly authenticated, those are state law claims and not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also, e.g.*, *Smith v. Jones*, 326 F. App'x 324, 330 (6th Cir. 2009) (claim that trial court improperly admitted statements under a hearsay exception is a state evidentiary law issue not cognizable on federal habeas review); *Graves v. Romanowski*, 2008 WL 362990, *5 (E.D. Mich.) (finding a petitioner's claim that the trial court

violated his right to a fair trial by admitting recorded telephone conversations under a co-conspirator exception to the state's hearsay rules raised only a non-cognizable issue of state law).

Only when evidentiary rulings rise to the level of a constitutional violation are they cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. Petitioner argues the admission of these text messages violated his Sixth Amendment confrontation rights, citing *Bruton v. United States*, 39 U.S. 123 (1968).

The Confrontation Clause prohibits the admission of out-of-court testimonial statements by a non-testifying witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Davis v. Washington*, 547 U.S. 813, 821 (2006). In *Bruton*, the Supreme Court found a Confrontation Clause violation when a non-testifying co-defendant's confession naming the defendant as a participant in the crime was introduced in a joint trial. 391 U.S. at 135-36. The Confrontation Clause, however, is not implicated by the admission of non-testimonial hearsay statements. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

Statements made in furtherance of a conspiracy are non-testimonial in nature. *Crawford*, 541 U.S. at 56; *see also United States v. Tragas*, 727 F.3d 610, 615 (6th Cir. 2013) ("[t]he statements . . . were admitted as co-conspirator statements under Rule 801(d)(2)(E). As coconspirator statements made in furtherance of the conspiracy, they were categorically non-testimonial and also within a 'firmly rooted' exception to the hearsay rule. . . . Therefore, the Confrontation Clause does not bar their admission.") (internal citations omitted); *United States v. Martinez*, 430 F.3d 317, 329 (6th Cir. 2005) (following *Crawford* and finding that co-conspirator statements made in furtherance of a conspiracy are not testimonial in nature); *United States v. Sutton*, 387 F. App'x 595, 601 (6th Cir. 2010) ("By definition," a conspirators' statements in furtherance of the conspiracy "are not by their nature testimonial; the one making them has no

'awareness or expectation that his or her statements may later be used at a trial.'" (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)); *United States v. Bartle*, 835 F.2d 646, 652 n.3 (6th Cir. 1987) (observing that Supreme Court case law has made it clear that coconspirator statements are "'firmly rooted' enough in our jurisprudence to assuage any *Bruton* concerns").

The Ohio court's evaluation of Petitioner's Confrontation Clause claim, and finding *Bruton* distinguishable from the facts presented, was not contrary to nor an unreasonable application of the above federal law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented. The appellate court thus correctly found Petitioner could not raise an ineffective assistance of counsel claim based on the failure to raise this – ultimately meritless – claim. *See Lash II*, 2018 WL 1778654, at *4 ("In conclusion, all three of Lash's proposed assignments of error have no merit. Accordingly, Lash cannot meet his burden under App.R. 26(B)(5) to demonstrate 'a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal.'"). This, in turn, is not contrary to, or an unreasonable application of federal law because failure to raise meritless claims cannot violate *Strickland*. *See Kelly*, 846 F.3d at 831; *Coley*, 706 F.3d at 752. As such, the undersigned recommends the Court find Ground Three procedurally defaulted.

Ground Four

In Ground Four, Petitioner asserts ineffective assistance of appellate counsel for failure to raise the issues he presented in his Rule 26(B) application. *See* Doc. 1-4, at 5-6; Doc. 11, at 10-12. As explained in addressing those underlying claims above, the state appellate court did not reach a decision contrary to, or an unreasonably application of, federal law in denying Petitioner's ineffective assistance of appellate counsel claims. On review of the 26(B) application, the state appellate court found no merit to Petitioner's underlying challenges regarding the sufficiency of

the evidence, manifest weight of the evidence, and failure to challenge the admission of the text messages. *Lash II*, 2018 WL 1778654. Therefore the state court found appellate counsel had not performed deficiently nor could Petitioner show prejudice under *Strickland*. *Id.* at *4 ("In conclusion, all three of Lash's proposed assignments of error have no merit. Accordingly, Lash cannot meet his burden under App.R. 26(B)(5) to demonstrate 'a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal.'"). As discussed above in relation to whether Petitioner could show cause and prejudice, this is not an unreasonable application of federal law, because failure to raise meritless claims cannot violate *Strickland*. *See Kelly*, 846 F.3d at 831; *Coley*, 706 F.3d at 752. The undersigned thus recommends Ground Four be denied.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).